UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00046-GNS

WEST AMERICAN INSURANCE COMPANY     PLAINTIFF

v.

M&M SERVICE STATION EQUIPMENT
SPECIALIST, INC., et al.     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action involving an underlying personal injury claim against Defendants M&M Service Station Equipment Specialist, Inc.'s ("M&M") and Chad Henry ("Henry")[1] by Defendant Taylor Montgomery ("Montgomery") in Rowan Circuit Court. This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 32). The motion has been fully briefed by the parties and is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. STATEMENT OF FACTS AND CLAIMS

Plaintiff West American Insurance Company ("West American") seeks a declaratory judgment regarding its duty to defend or indemnify M&M in connection with personal injury claims asserted by Montgomery against M&M and its former employee, Henry, following a motor vehicle accident on August 28, 2015 in Rowan County, Kentucky. (Compl. ¶ 2, DN 1; Compl. Ex. B, ¶¶ 4-5, DN 1-3 [hereinafter Montgomery Compl.]). In that action, (the

---

[1] This Court has previously entered a default against Henry pursuant to Fed. R. Civ. P. 55(a). (Order, DN 31).

"Montgomery suit") Montgomery has alleged that Henry negligently operated a vehicle owned by M&M which collided with her vehicle and that M&M is both vicariously and directly liable for Henry's negligence. (Montgomery Compl. ¶¶ 5-8, 10; Pl.'s Mot. Summ. J. Ex. F, ¶ 2, DN 32-7 [hereinafter Montgomery Am. Compl.]).

M&M is the named insured on a business auto policy (the "Policy") issued by West American for the period from May 1, 2015, to May 1, 2016. (Compl. ¶ 18; Pl.'s Mot. Summ. J. 2-3). The Policy contains the following provision for liability coverage:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
> . . .
> We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

(Pl.'s Mot. Summ. J. 4; Pl.'s Mot. Summ. J. Ex. A (PageID # 615), DN 32-1 & 32-2 [hereinafter Policy]). The Policy's limit of insurance for covered damages resulting from a single accident is $1,000,000, regardless of the number of covered vehicles, drivers, premiums paid, claims made, or vehicles involved. (Pl.'s Mot. Summ. J. 4; Policy (PageID # 619)). The Policy defined the term "insured" to include "[a]nyone else while using with your permission a covered 'auto' you own, hire, or borrow . . . ."[2] (Pl.'s Mot. Summ. J. 4; Policy (PageID # 615, 669)). Further, it contains an exclusion for "punitive or exemplary damages," which provides:

> Regardless of any other provision of this policy, this policy does not apply to (and no coverage is provided for) "punitive or exemplary damages" or

---

[2] "You" and "your" in the Policy refers to "the Named Insured shown in the Declarations," *i.e.*, M&M. (Pl.'s Mot. Summ. J. 5; Policy (PageID # 614)).

> any costs, attorney's fees, interest, "damages" or any other amounts attributable to "punitive or exemplary damages." However, if a suit is brought against an "insured" arising out of a claim which alleges both compensatory damages and "punitive or exemplary damages", we will defend the entire suit despite the fact that coverage only applies to (and we will only pay for) the covered compensatory damages.

(Policy (PageID # 668)). "Punitive or exemplary damages" are defined as "includ[ing] damages which are intended to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for 'bodily injury' or 'property damage'." (Policy (PageID # 668)).

The Policy was a renewal of insurance previously issued to M&M by West American. (Pl.'s Mot. Summ. J. 5). Henry and another M&M employee were excluded from M&M's coverage under the prior year's policy (beginning May 1, 2014). (Pl.'s Mot. Summ. J. 5). M&M's President informed Henry by email of his exclusion from M&M's insurance; Henry was thus prohibited from operating any M&M vehicle and was routinely so reminded. (Pl.'s Mot. Summ. J. 6-7). Henry did not remember receiving the email, but acknowledged being told he could not drive M&M vehicles and testified that he understood the prohibition. (Def.'s Mem. Opp. Pl.'s Mot. Summ. J. 7, DN 38 [hereinafter Montgomery Resp.]; C. Henry Dep. 91:13-19, Jan. 26, 2017, DN 38-2; Pl.'s Mot. Summ. J. 6-7; Pl.'s Mot. Summ. J. Ex. D, at 6, DN 32-5; Def.'s Mem. Opp. Pl.'s Mot. Summ. J. 2, DN 37 [hereinafter M&M Resp.]).

Prior to issuing the Policy, West American informed M&M that it would be required to remove Henry from its list of authorized drivers and sign an "Exclusion of Named Person" endorsement for Henry. (Pl.'s Mot. Summ. J. 5). This endorsement, signed by M&M's vice president, stated in relevant part:

> In consideration of the issuance and/or continuance of this policy, it is hereby agreed that the insurance provided by this policy does not apply to any person or

3

entity for any "accident" or "loss" of any kind arising out of the operation or use
of a covered "auto" by the following person(s):
NAMED PERSON(S)
1.   CHAD HENRY
. . .
In the event that this endorsement excludes liability coverage for the Named
Insured or others in violation of any law, then this exclusion shall apply to the
extent the limits indicated in the declarations exceed the minimum limits required
by law at the time of "loss".

(Pl.'s Mot. Summ. J. Ex. C, at 2, DN 32-4). This endorsement, as added to the Policy, was in addition to a Kentucky-specific exclusion of Henry contained within the Policy which provided:

It is agreed the Company shall not be liable for loss, damage and/or liability due
to the operation of a covered auto by the following person(s):
NAMED PERSON(S)
1.   CHAD HENRY
. . .
The limit of the Company's liability shall not be more than the limit of the
financial responsibility law of the state in which such finding was made. All
other coverages, including no fault and physical damage coverages will remain in
effect at limits thereby specified within the policy.

(Policy (PageID # 917, 918)).

On August 28, 2015, Henry drove an M&M vehicle and was involved in the collision with Montgomery's vehicle. (Pl.'s Mot. Summ. J. 7). According to Defendants, Henry drove the M&M vehicle after a fellow M&M employee, Davey Steagall/Stigall[3] ("Steagall"), told him that he could drive himself home. Henry did not drive himself directly home, however, but detoured for "personal reasons" before he was involved in the collision with Montgomery.[4] (M&M Resp. 3; Montgomery Resp. 8).

On November 13, 2015, Montgomery filed suit against Henry and M&M, alleging Henry's negligence in operating the vehicle and M&M's liability for such negligence under the

---

[3] The spelling differs between the parties.
[4] This was apparently for the purpose of smoking marijuana. (Montgomery Resp. 8; C. Henry Dep. 61:20-62:17, 66:4-24, 69:1-12, DN 38-2).

doctrine of *respondeat superior*. (Montgomery Compl. ¶¶ 6-8, 10). In addition, Montgomery seeks punitive damages stemming from Henry's admission to police that he had smoked marijuana prior to the collision. (Montgomery Compl. ¶ 9). Montgomery has also added a direct negligence claim against M&M alleging M&M knew or should have known that Henry was an "incompetent or reckless driver" due to his criminal record, and that M&M "failed to put sufficient safeguards in place and failed to take sufficient action" to prevent Henry's operation of M&M vehicles. (Montgomery Am. Compl. ¶¶ 2(B), 2(H)-2(O)). The Montgomery suit is still pending in Rowan Circuit Court. (M&M Resp. 3).

West American has defended both M&M and Henry in the Montgomery suit, subject to a reservation of rights. (Pl.'s Mot. Summ. J. 8). West American acknowledges its liability for Henry's operation of a covered vehicle up to the amount required by Kentucky's motor vehicle financial responsibility law[5] but filed the instant action on April 13, 2016, asking the Court for a judgment as a matter of law on various issues, which are discussed below.

## II. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a

---

[5] Kentucky law requires minimum automobile insurance coverage of $25,000.00 for damages for bodily injury and $10,000.00 for property damage. KRS 304.39-110(1)(a)(1).

5

genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. The Declaratory Judgment Act

While not initially addressed by the parties, the Court must consider the threshold issue of whether to exercise jurisdiction over this matter arising under the Declaratory Judgment Act. In relevant part, the Act provides:

> In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The United States Supreme Court has indicated that this Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In passing the Act, Congress

"created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id.* at 288.

"In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007). Abstention considerations involving underlying proceedings in state court implicate the *Wilton/Brillhart* doctrine. *Wilton*, 515 U.S. at 289-90 (holding that a court acted within its bounds in staying a declaratory judgment action where parallel state proceedings were underway); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942) (setting a standard for discretion when state proceedings are pending).

The Court must therefore determine whether it should exercise jurisdiction over this matter. *See Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991). The Sixth Circuit has instructed district courts to examine five factors to determine whether abstention is appropriate under the *Wilton/Brillhart* doctrine, namely:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve as a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted). The *Grand Trunk* factors embody three main principles: efficiency, fairness, and federalism. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (citation omitted).

7

1. *Settlement of the Controversy and Clarification of Legal Relations*

In insurance coverage cases, most courts consider the first two *Grand Trunk* factors together because "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008) (citations omitted). Ultimately, "a declaratory judgment is proper if it will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *Argonaut-Midwest Ins. Co. v. Johnson*, No. 3:14-CV-00395-TBR, 2014 U.S. Dist. LEXIS 168219, at *5 (W.D. Ky. 2014) (internal quotation marks omitted) (citations omitted).

West American is not named in the underlying state court matter, so the exact insurance coverage dispute before this Court will not be directly at issue in the Montgomery suit. "However, this fact alone does not necessarily mean that declaratory relief would settle the controversy." *Arrowood Indem. Co. v. Drees Co.*, No. 14-169-DLB-CJS, 2015 U.S. Dist. LEXIS 2755, at *8-9 (E.D. Ky. 2015). The Court therefore considers "whether the scope of insurance coverage depends on fact-based questions of state law, and, if so, whether those same questions are likely to be addressed by the [Rowan] Circuit Court." *Id.* at *9.

West American contends that the insurance coverage issues presented in this case can be settled as a matter of law, as the material facts are undisputed and the questions presented "do not depend upon any factual findings by the state court in the Montgomery Suit." (Pl.'s Supp. Br. 7, DN 44). The Court agrees that there is a clear distinction between the factual disputes at

issue in the Montgomery suit and those before this Court.[6] Therefore, this factor weighs in favor of this Court's exercise its discretionary jurisdiction over the declaratory judgment action.

### 2. *Race for Res Judicata*

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for *res judicata*." *Flowers*, 513 F.3d at 558. The Sixth Circuit has explained that this analysis is "meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). Where there is no direct evidence in the record to suggest a declaratory action was motivated by such "procedural fencing," courts "are reluctant to impute an improper motive to a plaintiff." *Id.* (citations omitted).

Timing is often an issue considered in analyzing this factor. In *Flowers*, the federal declaratory action was brought several years after the state court proceedings; the Sixth Circuit found that while the federal action "may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives [the plaintiff] the right to do precisely that, especially when the state court litigation has been ongoing for several years without resolving the issue." *Flowers*, 513 F.3d at 558. In *Secura Insurance Co. v. Gray Construction, Inc.*, 661 F. Supp. 2d 721 (W.D. Ky. 2009), this Court found that where the federal

---

[6] As discussed below, Henry's coverage under M&M's insurance policy with West American is at issue in this action, but since the facts controlling coverage are undisputed the issue is a question of law—West American's duty to defend and indemnify M&M and Henry in the Montgomery suit—rather than the fact-based determination of the state-court defendants' respective liability to Montgomery. Montgomery's generic argument that the pendency of the state court proceedings creates "the possibility that this Court's ruling may be inconsistent with the ultimate outcome of the state court case" is therefore unpersuasive. (Def.'s Br. 5, DN 43).

9

declaratory plaintiff brought the action one year after the underlying amended complaint was filed in state court and one of the defendants acknowledged the slow-moving nature of the state court action (due to a large volume of defendants), the third factor weighed in favor of exercising jurisdiction. *Id.* at 728-29. Recently, this Court was "not willing to impute a bad motive" where the plaintiff filed a federal declaratory judgment action four weeks after it was notified of the defendants' claim, and six weeks before the underlying state court suit was filed. *Westfield Ins. Co. v. Estate of McMahan*, No. 3:16-CV-00809-TBR, 2017 U.S. Dist. LEXIS 65750, at *9-11 (W.D. Ky. May 1, 2017) (holding that this factor did "not weigh against the exercise of jurisdiction.").

Defendants have argued that this action is "premature," (M&M Resp. 14-15; Montgomery Resp. 11). Although Plaintiff filed for a declaratory judgment just five months after the Montgomery suit was filed, Montgomery has, acknowledged the difficulties facing the state court action.[7] (Montgomery Resp. 11). "A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of a federal rather than state court, a choice given by Congress." *Flowers*, 513 F.3d at 558 (quoting *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986)). All things considered, this factor weighs slightly in favor of exercising jurisdiction over this action.

---

[7] In her response, Montgomery notes:

> Thus far, the underlying state court action has been anything but normal and run-of-the-mill. . . . For instance, Chad [Henry] had to be tracked down for his deposition and it took an order of the state trial court to force his attendance. There are other fact witnesses, such as Davey [Steagall], whose current whereabouts are unknown. There is no current discovery deadline in the state court action.

(Montgomery Resp. 11).

### 3. *Increased Friction between Federal and State Courts*

Fourth, the Court must consider "whether accepting jurisdiction would increase friction between federal and state courts." *Id.* at 559. "[T]he mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). Three sub-factors bear on this issue:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). These sub-factors are discussed in turn.

"First, the Court must determine whether the state court's resolution of the factual issues is necessary to the district court's resolution of the declaratory judgment." *Flowers*, 513 F.3d at 560. In cases seeking a declaration regarding "the scope of insurance coverage," the Sixth Circuit has "recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings." *Id.* (citing *Stewart Title*, 327 F.3d at 454; *Green*, 825 F.2d at 1067). As discussed above, such is the case here; this sub-factor is thus fairly neutral.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. "Generally, state courts are better situated than federal courts to resolve disputes over state regulated insurance contracts and novel questions of state law." *Arrowood Indem. Co. v. Drees Co.*, 2015 U.S. Dist. LEXIS 2755, at *21 (E.D. Ky. 2015) (citing *Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 815-16). Courts have also noted, however, that "not all issues of insurance contract interpretation

11

implicate such fundamental state policies that federal courts are unfit to consider them." *Flowers*, 513 F.3d at 561; *compare Stewart Title*, 327 F.3d at 454 (reasoning that because the declaratory plaintiff-insurer was not a party to the state court action and the issues before the federal court were not before the state court, the principles of comity would not be offended) *with Flowers* ("despite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case."). The Court finds that this factor is neutral in this instance.

"The final sub-factor requires the court to determine whether the issue in the federal action implicates important state policies and therefore would be more appropriate for the state court to address." *Secura*, 661 F. Supp. 2d at 730. The Sixth Circuit has held that issues of "insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous*, 373 F.3d at 815. Concern for public policy, and the position that state courts occupy in best identifying and enforcing such policy, has "been frequently applied in cases of insurance contract interpretation and [the Sixth Circuit has] held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers*, 495 F.3d at 273 (collecting cases). Plaintiff concedes that the third sub-factor, alone, weighs in favor of abstention; the Court agrees. (Pl.'s Supp. Br. 9). Overall, this factor weighs slightly in favor of abstention.

### 4. *Availability of Alternative Remedy*

The Sixth Circuit has stated that the district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. Following a split in precedent regarding "the possibility of seeking a declaratory judgment or indemnity action in

state court counsels against the district court exercising jurisdiction[,]" the Sixth Circuit held that "rather than applying a general rule, our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

As is almost always the case, there are alternative remedies available; the question, however, is whether any of these are better or more effective.[8] Since West American is not a party to the Montgomery suit, it "would be forced to either file a new action in state court or move for leave to intervene in the existing state action . . . ." *Principal Life Ins. Co. v. Doctors Vision Ctr. I, PLLC*, 2013 U.S. Dist. LEXIS 54733, at *27-28 (W.D. Ky. 2013) (finding that the fifth factor supported the district court's exercise of jurisdiction). As was the case in *Doctors Vision Ctr.*, dismissal would not provide West American with a superior remedy; the fifth factor thus supports the Court's exercise of jurisdiction.

### 5. *Balance of Factors*

In all, the Court finds that the balance of these factors weighs against abstention. Accordingly, the Court will address the merits of Plaintiff's motion.

---

[8] One such alterative remedy available to Plaintiff is to seek a declaratory judgment in state court under KRS 418.040, which states:

> In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

Alternatively, Plaintiff could intervene in the Montgomery suit, or file an indemnity action at the conclusion of the state action.

### B. West American's Motion for Summary Judgment

West American has moved for summary judgment on the bases that: (1) the Policy's "Exclusion of Named Person" provision relating to Henry applies to all claims asserted in the Montgomery suit; (2) West American's potential indemnity obligation in the Montgomery suit is limited to that required under the Kentucky Motor Vehicle Reparations Act ("MVRA"); (3) West American does not owe a duty to defend M&M in the Montgomery suit; (4) West American does not owe any duty to defend or indemnify Henry in the Montgomery suit because he does not qualify as an "insured" under the Policy; and (5) the Policy does not cover any potential award of punitive damages in the Montgomery suit. (Pl.'s Mot. Summ. J. 3; Pl.'s Reply Supp. Mot. Summ. J. 1-2, DN 40 [hereinafter Pl.'s Reply]). In response, Montgomery contends that she has raised "a legitimate fact issue as to whether or not [Henry] can be believed with respect to his story that he did not drive until after dropping of [his co-worker]." (Montgomery Resp. 9). Montgomery further argues that M&M's prohibition on Henry's operation of company vehicles was ineffectual, as Henry's supervisor (his father) was unaware at the time of the accident that Henry was not allowed to drive a company truck. (Montgomery Resp. 9).

#### 1. *Exclusion*

First, West American contends that the terms of the Policy excluded coverage of Henry as a driver under M&M's Policy. (Pl.'s Mot. Summ. J. 12-14). As discussed above, Henry was expressly excluded from coverage under the Policy so that any claims arising from Henry's operation of a motor vehicle are not subject to coverage—except to extent that coverage is required by the MVRA. While both Defendants attempt to rely on the Kentucky Supreme Court's decision in *Mitchell v. Allstate Ins. Co.*, 244 S.W.3d 59, 65 (Ky. 2008), that case is clearly distinguishable. *Mitchell* involved the issue of insurance coverage in the context of a

permissive use by a person not named as an insured under the terms of an automobile liability policy.[9] *See id.* at 65. In stark contrast in the case *subj judice*, anyone *but Henry* could have been afforded coverage as a permissive user of a covered vehicle. Henry, however, could have never been brought within the Policy's coverage as a permissive user because both the Policy's terms and endorsement expressly excluded him from coverage. This conclusion, of course, does not mean that West American is free of its obligations under the Policy, as discussed below.

### 2. *Duties to Defend and Indemnify*

West American erroneously asserts that it does not owe a duty to defend M&M in the Montgomery suit, and owes not duty to defend or indemnify Henry in the Montgomery suit because Henry does not qualify as an "insured" under the Policy. (Pl.'s Mot. Summ. J. 14-22). While it is true that the Policy excluded Henry from coverage beyond the statutory minimum liability requirements, that is not determinative of West American's responsibility in the Montgomery suit. Pursuant to the Policy and MVRA, West American is required to indemnify M&M and Henry up to the statutory minimum coverage requirements of $25,000.00 for damages for bodily injury and $10,000.00 for property damage. *See* KRS 304.39-110(1)(a)(1).

---

[9] In Mitchell, the Kentucky Supreme Court noted:

> An automobile insurance company has a general responsibility to provide coverage for people who may not be named insureds in the written policy, but fall under the coverage provided for in the policy. This responsibility is usually satisfied through the language of the policy's omnibus clause which extends insurance protection to persons other than the named insured—including people who pay no premiums toward the policy and are in effect unknown to the insurer. . . . Frequently the omnibus clause's language extends coverage to any individual properly using the insured vehicle. And generally, an individual is covered if the person driving the insured vehicle had permission to operate the vehicle.

*Id.* at 61-62 (internal citations omitted) (citation omitted).

15

Further, West American's duty to defend is broader than its duty to indemnify. As the Kentucky Supreme Court has explained, "[A]n insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Kentucky*, 179 S.W.3d 830, 841 (Ky. 2005) (citing *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)). Thus, under Kentucky law, West American has a duty to defend both M&M and Henry in the Montgomery suit, even though it may do so subject to a reservation of rights. *See Aetna Cas. & Sur. Co.*, 179 S.W.3d at 841.

   **3.** ***Punitive Damages***

Finally, West American asserts that its Policy excludes coverage for any potential award of punitive damages. (Pl.'s Mot. Summ. J. 22-23). The Court agrees. The Policy's exclusion of coverage for punitive damages awards is unequivocal and unambiguous. (Policy (PageID # 668)). Kentucky courts have held that such exclusions are enforceable. *See, e.g.*, *Deerfield Ins. Co. v. Warren Cty. Fiscal Court ex rel. City Cty. Planning Comm'n*, 88 S.W.3d 867, 875 (Ky. App. 2002) ("[T]he policy exclusions are clear and unambiguous in denying coverage for punitive damages . . . ."); *see also* 12 Steven Plitt et al., *Couch on Insurance* § 170:18 (3d ed. 2017) (noting that an automobile liability "policy may expressly except coverage for punitive damage awards."). Accordingly, Plaintiff is entitled to summary judgment on this basis.

**IV.** <u>**CONCLUSION**</u>

For the reasons outlined above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (DN 32) is **GRANTED IN PART** and **DENIED IN PART** as follows.

   1. West American Insurance Company is required to indemnify M&M Service Station Equipment Specialist, Inc. and Chad Henry to the extent of Kentucky's minimum

liability coverage in the amounts of $25,000.00 and $10,000.00 for bodily injury and property damage, respectively.

2.  West American Insurance Company is required to defend M&M Service Station Equipment Specialist, Inc. and Chad Henry in the Montgomery action.

3.  West American Insurance Company has no liability under the terms of the Policy for punitive damages awarded against M&M Service Station Equipment Specialist, Inc. and Chad Henry in the Montgomery action.

**This is a final and appealable order, and there is no just cause for delay.** The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
December 11, 2017

cc: counsel of record